IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARATHON ASHLAND PETROLEUM, LLC,

        Plaintiff,      Case No. 3:04 CV 7638

 -vs-

                   MEMORANDUM OPINION

SELKER BROS., INC.,

        Defendant.

KATZ, J.

This matter is before the Court on the plaintiff's motion for summary judgment (Doc. 104-05), the defendant's response (Doc. 116), and the plaintiff's reply (Doc. 117).

**I. Background**

In October 1999, Plaintiff Marathon Ashland Petroleum LLC ("MAP") and Defendant/Counter-claimant Selker Brothers, Inc. ("Selker") entered into an agreement for MAP to sell petroleum products in the form of gasoline to Selker for use in its gas stations in and around northwest Pennsylvania. MAP agreed to provide Selker with petroleum products from its terminals at market prices. Selker, in turn, agreed to pay for the products within ten days following shipment. MAP alleges that it made deliveries of petroleum product to Selker on various days between May 16, 2004 and June 1, 2004 for which Selker did not pay, thereby violating the 1999 contract and owing MAP at least $908,210.44 plus interest in expectation damages. Such is the content both of Plaintiff's complaint (Doc. 1) and motion for summary judgment (Doc. 105).

Selker alleges that, beginning approximately January 2004, MAP delivered shipments of petroleum product that contained contaminated ingredients. Selker further alleges that such shipments rendered the product non-merchantable in breach of the implied warranty of merchantability. Additionally, many of Selker's customers' vehicles were damaged by the allegedly contaminated gasoline, Selker's business was thus damaged, and it was forced to shut down a vast majority of its gas stations because of that breach. Such is the content both of Defendant's counter-claim (Doc. 26) and opposition to Plaintiff's motion for summary judgment (Doc. 116). Defendant Selker has not filed a motion for summary judgment on its counter-claim.

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

In order to prevail on a breach of contract claim in Ohio, a plaintiff must first establish (1) the existence of a valid contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. *See Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006). A successful plaintiff will be awarded damages that place the injured party in as good as position as it would have been in but for the defendant's breach. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 704 (6th Cir. 2005). A party may recover lost profits if (1) profits were within the contemplation of the parties at the time the contract was formed, (2) the loss of profits was a probable result of a breach of contract, and (3) the profits were not remote and speculative and may be demonstrated with reasonable certainty. *Charles R. Combs Trucking, Inc. v. International Harvester Co.*, 12 Ohio St.3d 241 (1984).

There is a fundamental difference of understanding between the two sides to the underlying story of this case: the parties' definitions of the word "product" are illustrative of this difference. MAP defines the "product" at issue as the gasoline which was "delivered . . . to Selker on various days between May 16, 2004 and June 1, 2004." Pl. Br. at 1 (Doc. 105). Selker, on the other hand, defines "product" in its brief as "the [gasoline] which MAP agreed to sell and [Selker] agreed to purchase in the parties' October 1999 [a]greement . . . ." Def. Br. at 2 n.1 (Doc. 116). In other words, MAP accuses Selker of not paying for, specifically, the May 16 - June 1 gasoline. Selker defends itself by reference to the gasoline shipments prior to May 16, 2004. Throughout their briefs, the parties are talking about different "products." The Plaintiff has moved for summary judgment on its claim (with regard to Plaintiff's "product") and the Defendant's

4

counterclaim, but the Defendant has not filed for summary judgment on its counterclaim (with regard to Defendant's "product").

Selker does not deny that it has not paid for the May 16- June 1 gasoline shipments. In fact, Selker admits that it has not paid. Neither does Selker allege that the May 16- June 1 gasoline shipments themselves were non-merchantable or that any damages resulted from that particular product shipment. Selker further stipulates as to the existence of a valid contract (the October 1999 agreement) and to the delivery by MAP of petroleum products between May 16 and June 1, 2004. As such, Selker admits to having breached the 1999 agreement with regard to that gasoline which is the subject of MAP's complaint and motion for summary judgment. Therefore, this Court must grant summary judgment in favor of Plaintiff MAP on the issue of Selker's failure to abide by the 1999 agreement with regard to the May 16 - June 1, 2004 shipments of petroleum products.

However, the Court thinks it wise to withhold an award of damages in the amount requested by Plaintiff, or any amount, at this juncture, because MAP has not demonstrated that there are no genuine issues of material fact with regard to whether Plaintiff breached the 1999 agreement by shipping defective gasoline to Selker prior to May 16, 2004. This Court may grant summary judgment in favor of a moving party, even if there is a possibility of set-off brought about by claims remaining as an issue for litigation. "[T]he fact that [the defendant] may be entitled to a set-off on one or more of its counterclaims does not prevent the Court from granting summary judgment in favor of [the plaintiff] on the breach of contract . . . claim." *MPW Industrial Services, Inc. v. Pollution Control Systems, Inc.*, No. 2:02-cv-955, 2006 WL 640438 at

*4 (S.D. Ohio Mar. 9, 2006).  The Court may grant summary judgment on Plaintiff's claim while reserving a ruling on damages until after the resolution of Defendant's counter-claim.[1]

MAP has not established that Selker's claims for lost profits were remote, speculative, or not demonstrated to a reasonable certainty.  Selker's evidence that MAP breached its contract by shipping contaminated gasoline includes an admission by a MAP employee, complaints by customers, and an in-house estimate of damages resulting from the defective gasoline.  If even only the first two[2] of these are to be considered in the light most favorable to the nonmovant, as this Court is required to view the facts, a genuine issue of material fact is established as to whether MAP performed in accordance with or breached the 1999 agreement and the implied warranty of merchantability, as well as whether such breach proximately caused the damages resulting from, at least, Selker's resale of the contaminated product at a loss and, at most, Selker's shutting down of a number of its gas stations.  Therefore, a genuine issue of fact exists, and the Court cannot grant summary judgment in favor of MAP on Selker's counter-claim.

---

[1] In fact, it is within the realm of possibility that this grant of summary judgment could be rendered moot, or at least subject to reconsideration, if, for instance, Defendant in the course of pursuing its counterclaim establishes that Plaintiff breached the 1999 agreement prior to May 16, 2004, thereby rendering the contract void at that point.  It is even possible that a portion, small or large, of the amount requested by Plaintiff in its complaint and motion for summary judgment could be offset by whatever damages Defendant is able later to establish were proximately caused by Plaintiff's breach.  These arguments need not be pursued at this point, however, because, as described herein, there remain genuine issues of material fact as to whether Plaintiff breached the agreement prior to May 16, 2004, and whether such breach proximately caused damage to Defendant's business or profits.  The Court now has no occasion to consider or rule on a grant of summary judgment by Defendant on its counterclaim, and in any case, the issues underlying a motion for summary judgment by Defendant on its counterclaim have not been satisfactorily briefed.

[2] MAP and Selker disagree as to the value of the in-house report and whether it may be admitted as part of expert testimony or otherwise.

6

**IV. Conclusion**

For the reasons discussed herein, Plaintiff's motion for summary judgment (Doc. 104-05) is hereby granted in part and denied in part. The Court grants summary judgment with regard to the liability of Selker on Plaintiff's breach of contract claim, but does not grant a set amount of damages, those being subject to further litigation or mediation between the parties. The Court denies Plaintiff's motion for summary judgment with regard to Defendant's counterclaim for breach of contract and implied warranty of merchantability.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE